IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MILLER BREWING INTERNATIONAL, INC.,

        Plaintiff,

v.

IMPORTBEER DISTRIBUIDORA DE BEBIDAS LTDA,
and MARCUS VINCIUS PINTO,

        Defendants.

Case No. 12-cv-1047-pp

**DECISION AND ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT AND ORDERING PLAINTIFF TO
SUBMIT FORM OF JUDGMENT**

**I.    Introduction**

On October 12, 2012, the plaintiff, Miller Brewing International Inc., filed a complaint alleging two counts: (1) breach of contract and (2) breach of guaranty. Docket #1. The defendants, Importbeer Distribuidora de Bebidas LTDA and Marcus Vincius Pinto, failed to respond to the action. On January 16, 2014, Miller filed a motion for summary judgment and requested that the clerk's office enter default, Docket #14; it did so on March 9, 2015. This order addresses Miller's unopposed motion for summary judgment.

Because the defendants have not responded to the motion, the court accepts as undisputed the facts Miller presented in its complaint and motion. FirstMerit Bank N.A. v. Koenig, No. 13-CV-534, 2014 WL 2743190 at *4 (W.D. Wis. June 17, 2014). The court will apply Wisconsin state law to both causes of action, because complete diversity exists amongst the parties. "A federal court sitting in diversity must apply the substantive law of the state in which it sits." Piltch v. Ford Motor Co., 778 F.3d 628, 632 (7th Cir. 2015) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64, 58 (1938)). "Courts do not worry about conflict of laws unless the parties disagree on which state's law applies." Auto-Owners

1

Ins. Co. v. Websolv Computing, Inc., 580 F.3d 543, 547 (7th Cir. 2009) (citing Wood v. Mid-Valley Inc., 942 F.2d 425, 427 (7th Cir. 1991)). No party in this case has raised a conflict-of-law issues. Even if the parties had disagreed about which state's substantive law applied, the court would look to Wisconsin's choice of law rules, which determine contract rights "by the law of the jurisdiction with which the contract has its most significant relationship." State Farm Mut. Auto. Ins. Co. v. Gillette, 251 Wis.2d 561, 577 (Wis. 2002). Miller has a principal place of business in Wisconsin. Docket #1 at ¶1. The contract's forum clause bound the parties to litigation in Wisconsin. Docket #5-5 at 15. Miller alleged that "a substantial part of the events or omissions giving rise to [its] claim occurred in this district," and the defendants have not disputed this. Docket #1 at ¶5. Therefore, under both the Erie doctrine and Wisconsin choice-of-law principles, Wisconsin substantive law applies.

## II.   Facts

On December 1, 2010, Miller entered into a contract with Importbeer, in which Importbeer agreed to serve as "an exclusive distributor of Miller Genuine Draft beer . . . in the Brazilian states of Rio Grande do Sul and Santa Catarina." Docket #1 at ¶9. Under the terms of the agreement, the plaintiff sold "Miller Products to Importbeer in the amounts ordered by Importbeer, at prices designated in the Agreement or . . . set by Miller." Id. at ¶13. Importbeer agreed to pay the plaintiff for the products "it order[ed] either by case payment in advance, or on such credit terms as" plaintiff determined "in its sole discretion." Id.

In February of 2011, the plaintiff "extended credit to Importbeer for its orders of Miller Products." Id. at ¶14. The plaintiff did this according to the terms of the agreement, and on the condition "that all credit orders by Importbeer . . . were payable in full ninety (90) days after invoice." Id. "To induce the extension of . . . credit, and in consideration of and as a condition for . . . extension of credit," Pinto personally and individually guaranteed the debt. Id. In the guaranty, Pinto "absolutely . . . and unconditionally guaranteed full and punctual payment and satisfaction" of the debt. Id. at ¶15.

2

With the guaranty in place, Miller allowed Importbeer to place "numerous orders" for the plaintiff's products. Id. at ¶17. Importbeer placed the orders, via email and by phone, "by communicating the quantity . . . it desired." Id. The plaintiff then delivered the products to Importbeer and "sent . . . an invoice for each sale and shipment" that Importbeer "ordered on credit." Id. Each invoice reminded Importbeer "that payment in full for the sale was due no later than ninety (90) days after invoice." Id. Importbeer failed to make the payments as required and, as of October 12, 2012, had "104 outstanding invoices . . . totaling $1,637,112.59." Id. at ¶19.

In October of 2011, Importbeer agreed to "import some of the Miller Products into Brazil on behalf of another distributor, Brown-Forman." Id. at ¶20. Under the terms of that agreement, Importbeer "authorize[d] Brown-Forman to communicate the volume of Miller Products it wished to acquire from Importbeer . . . directly to Miller." Id. Importbeer then would "take receipt of all" of the products "ordered by Brown-Forman," pay for the products, and "sell and deliver" the products to Brown-Forman. Id. As of the time Miller filed the complaint, Importbeer had not made full payment for these products and "ha[d] 36 outstanding invoices for these orders totaling $501,822.72." Id. at ¶22. As of October 2012, Importbeer owed Miller $2,138,935.31 in total outstanding invoices, but had offset that amount by $298,433.89. Id. Thus, as of the date of the complaint, Importbeer owed Miller a total of $1,840,501.42. Id. at 22—23.

At several meetings in 2012 and in several emails during that same year, Importbeer acknowledged owing this debt. Id. at ¶¶24—25. Despite the plaintiff's multiple demands that Importbeer immediately cure the default, Importbeer "has refused and failed to pay any of the amount due." Id. at ¶25. The plaintiff has made similar demands to guarantor Pinto and he also has failed to make any payments. Id.

### III. Procedural History

The plaintiff filed this action for breach of contract and breach of guaranty on October 12, 2012. Docket #1. On November 2, 2012, the plaintiff

filed a motion asking the court for the issuance of letters rogatory, which the court granted on November 7, 2012. Docket ##2—3. Two years later, on October 16, 2014, the plaintiff asked the court to set a service date. Docket #12. During that two-year period, the Superior Court of Justice of the Federative Republic of Brazil provided assistance to the plaintiff in serving the defendants. Id. at 1—4. The plaintiff asserted that although the defendants had appeared at the Brazilian proceeding and objected to the letters rogatory, "[t]he rulings of the Superior Court of Justice establish that service was effected upon defendants, at the latest, when the Brazilian judicial process was deemed final . . . on September 1, 2014." Id. at 4. On October 20, 2014, the United States District Court entered an order enforcing a service date of September 1, 2014. Docket #13.

Under Fed. R. Civ. P. 12(c), the defendants had twenty-one days from September 1, 2014 to file a responsive pleading. The answer came due on Monday, September 22, 2014, but the defendants have not responded or made any appearance. The clerk's office entered default as to Importbeer and Pinto on March 9, 2015. On January 16, 2015, the plaintiff filed a motion for summary judgment, with an accompanying brief. Docket ##15—16. The plaintiff has indicated that it filed a motion for summary judgment, instead of a motion for default judgment, because "an order granting summary judgment might have more weight in a foreign jurisdiction." Docket #18 at 1.

IV. **Summary Judgment Standard**

Fed. R. Civ. P. 56 governs motions for summary judgment. It allows a party to "move for summary judgment, identifying each claim or defense . . . on which" the party seeks summary judgment. Fed. R. Civ. P. 56(a). If the moving party can show "that there is no genuine dispute as to any material fact" and that that party "is entitled to judgment as a matter of law," the "court shall grant summary judgment," stating "on the record the reasons for granting or denying the motion." Id.

To prove that there are no genuine, factual disputes, the moving party must support the motion with "particular parts . . . in the record," such as

4

"depositions, documents . . . affidavits or declarations, stipulations," etc. Fed. R. Civ. P. 56(c)(1)(a). The moving party may show "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(b). The court, however, "may consider other materials in the record," and not just those cited by the parties. Fed. R. Civ. P. 56(c)(3).

In 1986, the Supreme Court decided two cases which provided guidance to the lower courts in determining whether genuine issues of material fact exist. First, in Anderson v. Liberty Lobby, 477 U.S. 242 (1986), the Court noted "that a mere existence of some alleged factual dispute between the parties will not defeat" a motion for summary judgment. Id. at 247—48. The Court defined a "genuine" issue of fact as one for which "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248. To defeat a motion, the non-moving party cannot "rest upon the mere allegations or denials of [the] pleading, but must set forth specific facts showing that there is a genuine issue for trial." Id. The court must make "the threshold inquiry of determining whether there is the need for a trial." Id. at 250. See also O'Leary v. Accretive Health, Inc., 657 F.3d 625 (7th Cir. 2011).

Second, in Celotex Corp. v. Catrett, 477 U.S. 317 (1986), the Supreme Court explained that Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." Id. at 322—23. "[A] complete failure of proof concerning an essential element of the nonmoving party's case . . . renders all other facts immaterial." Id. The court must enter judgment for the moving party when "the nonmoving party has failed to make a sufficient showing on an essential element of her case." Id. See also O'Leary v. Accretive Health, Inc., 657 F.3d 625 (7th Cir. 2011).

Civil Local Rule 56 for the Eastern District of Wisconsin provides additional guidelines for parties filing motions for summary judgment. It requires the moving party to file the following documents with its motion:

> (A) a memorandum of law; (B) a statement setting forth any material facts to which all parties have stipulated; (C) a statement of proposed material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law; and (D) any affidavits, declarations, and other materials.

Civ. L. Rule 56(b). Further, the opposing party has thirty days from service of the motion to file a response or objection, and the movant has fourteen days from service of the response to file a reply. Id. Finally, Civil Local Rule 7(e) allows the court to hear oral argument at its discretion. Civ. L. Rule 7(e).

In this case, Miller filed the documents required by Civil L. Rule 56 on January 16, 2015. See Docket #15 and Docket ##15-1—15-28. The non-moving party has failed to respond. When that occurs, "the court will . . . accept" the moving party's "proposed facts as undisputed." FirstMerit Bank N.A. v. Koenig, No. 13-CV-534, 2014 WL 2743190 at *4 (W.D. Wis. June 17, 2014) (Peterson, J.) (citing Fed. R. Civ. P. 56(e)(2)). This does not mean, however, that "the court will . . . grant summary judgment simply because [the] motion is unopposed." FirstMerit Bank, N.A., 2014 WL 2743190 at *4. When the non-moving "party completely fails to respond . . . , Rule 56(e) permits judgment for the moving party only if appropriate—that is, if the motion demonstrates that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." Id. (quoting Johnson v. Gudmundsson, 35 F.3d 1104, 1112 (7th Cir. 1994)). When "the defendants have not advanced their own legal theory of the case and the court" accepts the movant's "proposed facts as admitted, the familiar summary judgment framework applies." FirstMerit Bank, N.A., 2014 WL 2743190 at *4.

## V. Analysis

A. <u>The plaintiff has proven that no genuine issue of material fact exists, and that it is entitled to summary judgment as a matter of law, on the issue of breach of contract.</u>

In Count I of the complaint, Miller alleges that Importbeer breached a contract. Docket #1 at 8. Under Wisconsin law, a plaintiff must demonstrate

three elements in order to prove a breach of contract claim: (1) that a valid contract exists; (2) that the defendant breached the contract; and (3) that damages stemmed from that breach. Matthews v. Wisconsin Energy Corp., 534 F.3d 547, 553 (7th Cir. 2008) (citing Northwestern Motor Car, Inc. v. Pope, 187 N.W. 2d 200 (Wis. 1971)).

Miller has demonstrated that a valid contract existed, because Miller and Importbeer entered into a "third party international distribution agreement" with an effective date of December 1, 2010. See Docket #15-5 at 2. Miller has demonstrated that Importbeer breached the contract when it made several orders for Miller Products, but did not pay for the goods provided by Miller. For example, on Monday October 3, 2011, Importbeer requested, via email, eight containers of products. Docket #15-7. (For additional orders, see Docket ##15-8—15-12.) Miller invoiced Importbeer for all of the orders from May 2011 through March of 2012. Docket ##15-13—15-23. Of the product ordered, Importbeer failed to pay for 140 shipments. Docket #15-24. This resulted in a breach of Sections 9.3 and 9.4 of the contract, which govern payment. Docket #15-5 at 11. Finally, Miller has shown that damages flowed from the breach, in the form of defaults in the amounts of $1,338,678.70 and $501,822.72 (a total of $1,840,501.42). Docket #15-24. See also Docket #15-1 at ¶20. In March of 2015, Importbeer presented a powerpoint presentation in which Importbeer acknowledged the default. Docket ##15-25—15-27.

These facts, taken as undisputed, demonstrate that no genuine issue of material fact exists and that Miller is entitled to judgment as a matter of law. Accordingly, the court finds that the plaintiff is entitled to relief, and grants the motion for summary judgment as to Count I of the complaint.

B. <u>The plaintiff has proven that no genuine issue of material fact exists, and that it is entitled to summary judgment as a matter of law, on the issue of breach of guaranty</u>.

"A guaranty is a contract," and "[t]he rules governing the construction of contracts apply." Harris v. Metropolitan Mall, 334 N.W.2d 519, 527 (Wis. 1983). In order to enforce a guaranty, the plaintiff must "bring a breach of contract

claim, which requires a showing of three elements: (1) the existence of a contract creating obligations flowing from defendant to plaintiff; (2) a breach of those obligations; and (3) damages from the breach." FirstMerit Bank N.A. v. Koenig, No. 13-CV-534, 2014 WL 2743190 at *4 (W.D. Wis. June 17, 2014) (internal citations omitted).

Miller has demonstrated that a valid guaranty existed, because in February of 2011, Pinto agreed to personally guaranty the debt arising from the third-party international distributor agreement between Miller and Importbeer. See Docket #15-6. The agreement states, "This Guaranty is an absolute, unconditional and continuing guaranty of the full and punctual payment and performance by Distributor." Id. at 2. By signing the agreement, Pinto agreed that the guaranty "is in no way conditioned upon any requirement that Miller first attempt to collect" from Importbeer. Id. Miller has demonstrated that there was a breach. Upon default by Importbeer, the guaranty made Pinto liable "to Miller without demand or notice of any nature." Id. By failing to make a "full and punctual payment" for the default created by Importbeer and guaranteed by Pinto, Pinto breached the contract. Id. Finally, Miller has shown that the breach resulted in damages to Miller of $1,840,501.42. See Docket ##15-5—15-27.

These facts, taken as undisputed, demonstrate that no genuine issue of material fact exists and that Miller is entitled to judgment as a matter of law. Accordingly, the court finds that the plaintiff is entitled to relief, and will grant the motion for summary judgment as to Count II of the complaint.

C. <u>Wisconsin law permits a plaintiff to recover a money judgment for the amount owed, and to recover pre- and post-judgment interest on the debt</u>.

Because the contract involved the sale of goods, the Wisconsin adoption of the Uniform Commercial Code ("UCC") governs the agreement. Section 402.703 of the Wisconsin UCC governs the seller's remedies in general. When

> the buyer . . . fails to make a payment due . . . with respect to any goods directly affected and, if the breach is of the whole contract, then also with respect to the whole undelivered balance, the

aggrieved seller may . . . recover damages for nonacceptance or in a proper case the price.

Wis. Stat. §402.703. When the aggrieved party brings an action for the price of the contract, §402.709 of the Wisconsin UCC governs. It allows the seller to recover the price if the buyer accepts the goods and "fails to pay the price as it becomes due." Wis. Stat. §402.709 It also allows the seller to recover "incidental damages." Id. Acceptance of the goods occurs when the buyer:

    (a) After a reasonable opportunity to inspect the goods signifies to the seller that the goods are conforming or that the buyer will take or retain them in spite of their nonconformity; or
    (b) Fails to make an effective rejection, but such acceptance does not occur until the buyer has had reasonable opportunity to inspect them; or
    (c) Does any act inconsistent with the seller's ownership; but if such act is wrongful as against the seller it is an acceptance only if ratified by the seller.

Wis. Stat. §402.606(1)(a)—(c).

Miller and Importbeer entered into a contract for the sale of goods. Docket #15-5. Importbeer ordered products, and Miller shipped the products to Brazil for distribution. Docket ##15-7—15-12. Importbeer accepted the goods by "taking physical possession and then redistributing the beer." Docket #15 at 7. See also Docket #15-1 at ¶34 and Docket #15-4 at ¶10. Importbeer failed to pay for 140 shipments, resulting in a total default of $1,840,501.42. Docket ##15-1; Docket #15-4 at ¶10; and Docket ##15-13—15-24. As a result of these undisputed facts, there is a basis for the court to enter a money judgment in favor of the plaintiff.

In Wisconsin, a court may award pre-judgment interest to the plaintiff "when the amount owed to it is readily determinable or when there is a reasonably certain standard of measurement by which one can ascertain the amount he owes." First Nat'l Bank of Manitowoc v. Cincinnati Ins. Co., 485 F.3d 971, 981 (7th Cir. 2007) (citing Olguin v. Allstate Ins. Co., 71 Wis.2d 160 (Wis. 1976)). "The equitable policy supporting such recovery is that a plaintiff should be compensated for the time value of the money he would have had if

9

the payment had been made when due." <u>Chicago Title Ins. Co. v. Runkel Abstract & Title Co.</u>, 653 F. Supp. 2d 926, 928 (W.D. Wis. 2009). Wisconsin law allows the recovery of pre-judgment interest "at the legal rate of five percent for contract damages, starting when demand for payment is made." <u>Id</u>. (citing Wis. Stat. §138.04).

The plaintiff has proven that the defendants breached the contract and breached the guaranty as a matter of law. Therefore, there is a basis for the court to enter a money judgment for the amount due on the contract. Because the plaintiff also has shown a reasonably determinable amount owed, there is a basis for the court to award the plaintiff pre-judgment interest on the money judgment.

Title 28 U.S.C. §1961(a) governs post-judgment interest. It allows interest "on any money judgment in a civil case recovered in a district court." <u>Id</u>. The statute requires calculation of this interest "from the date of the entry of judgment, at a rate equal to the weekly average of 1-year constant maturity Treasury yield, published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." <u>Id</u>. As a result, Miller has asked that "the Court's judgment accrue post-judgment interest at the federal statutory rate from the date of judgment until payment in full is received from Importbeer and/or Pinto." Docket #15 at 12. There is a basis for the court to grant that request, and to grant an award of post-judgment interest under §1961(a).

### VI. Conclusion

The plaintiff has demonstrated, through the undisputed facts, that it entered into a contract with the Importbeer, that Importbeer breached that contract, and that damages flowed from that breach. The plaintiff also has demonstrated, through the undisputed facts, that Pinto personally guaranteed that breached contract. Although the defendants have not responded, the moving party has provided facts sufficient to show entitlement to recovery as a matter of law.

10

Because the defendants accepted the goods and failed to pay, the court will enter a money judgment, on which the court will award pre-judgment interest because the plaintiff has shown a reasonably determinable amount owed. Finally, the court will award post-judgment interest, because the plaintiff is entitled to a money judgment in a civil case in district court.

**WHEREFORE**, the court **GRANTS** Miller Brewing International Inc.'s motion for summary judgment. The court **ORDERS** the plaintiff to submit a form of judgment within fourteen days of this decision.

Dated at Milwaukee, this \_8th\_ day of May, 2015.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**United States District Court Judge**